United States Court of Appeals,

Eleventh Circuit.

No. 95-4996.

Michael C. GOLD, Plaintiff-Appellee,

v.

CITY OF MIAMI, a Florida Municipal Corporation, Defendant,

Calvin Ross, individually, Rafael Suarez, individually, Jorge Perez, individually, William Campbell, Individually, Defendants-Appellants.

Sept. 17, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 92-1673-CIV-JWK), James W. Kehoe, District Judge.

Before HATCHETT, Chief Judge, COX, Circuit Judge, and MESKILL[*], Senior Circuit Judge.

PER CURIAM:

Rafael Suarez, Jorge Perez, William Campbell, and Calvin Ross appeal the district court's denial of their motion for summary judgment predicated on qualified immunity in this civil rights action filed by Michael Gold. For the reasons that follow, we reverse.

I. *Facts*[1]

The incident giving rise to Gold's action occurred on October 18, 1991. On that day, Gold pulled into a congested bank parking lot so that his passenger could use the bank's automated teller machine (ATM). While waiting for a parking space to open up, Gold noticed a uniformed police officer keeping watch over the area. He also noticed a woman who did not appear to be handicapped walk to her car parked in a handicapped space, get in, and start to drive away. Disturbed by this, Gold yelled to the officer, "[a]ren't you supposed to give them a ticket for parking in a handicapped

---

[*]Honorable Thomas J. Meskill, Senior U.S. Circuit Judge of the Second Circuit, sitting by designation.

[1]The district court's order denying summary judgment did not contain findings of fact. We therefore have no choice but to glean the facts from the record.

The facts we state for the present purposes are construed in the light most favorable to Gold. *See Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1420 n. 1 (11th Cir.1997); *McKinney v. DeKalb County, Ga.,* 997 F.2d 1440, 1442 (11th Cir.1993).

spot?" (R.2-91 at 28.) The officer did not respond. Gold then found a parking space, parked his car, walked toward the ATM, and loudly remarked to no one in particular, "Miami police don't do shit." (R.2-91 at 34.)

Upon hearing Gold's remark, a plainclothes officer who had been standing in the ATM line stated to the uniformed officer, "I think this guys [sic] got a problem." (R.2-91 at 36.) To this, Gold replied, "I don't have a problem. I'm just saying that "Miami [p]olice don't do shit.'" (R.2-91 at 36.) A different plainclothes officer who had been standing next to the uniformed officer then approached Gold and asked him for identification. After Gold produced his Florida driver's license and Florida Bar membership card, the officer headed toward the uniformed officer's patrol car to do a radio-check on the identification. The officer soon was joined by the uniformed officer and the other plainclothes officer.

Upon observing all of this, a couple in the ATM line remarked, "I can't believe they're doing this." (R.2-91 at 40.) Gold talked to that couple for a few minutes then approached the three officers and asked them what was going on. At that point, the officers arrested him for "disorderly conduct" and asked him to put his hands behind his back. Although Gold did so without resistance, the officers later charged him, along with the disorderly conduct charge, with "resisting arrest without violence."

After handcuffing Gold, the uniformed officer assisted Gold into the back of his patrol car. Some moments later, Gold complained to him that the handcuffs were applied so tightly that he was in pain. However, the uniformed officer did not loosen the handcuffs until roughly twenty minutes after Gold complained.

## II. *Procedural History*

Gold sued the three officers, Campbell, Perez, and Suarez, under 42 U.S.C. § 1983, alleging that they (1) violated his First, Fourth, and Fourteenth Amendment rights by falsely arresting him for disorderly conduct; and (2) violated his Fourth Amendment rights by applying the handcuffs too tightly and leaving them that way for an unreasonable amount of time. He also sued the now-former

2

Miami Police Chief, Calvin Ross, under § 1983, alleging that Ross violated his First, Fourth, and Fourteenth Amendment rights by failing to train and supervise subordinate officers regarding the constitutional limitations of Florida's disorderly conduct statute and regarding the proper response to an arrestee's handcuff complaints.[2]

The officers eventually moved for summary judgment on the basis of qualified immunity, and Gold moved for partial summary judgment on the basis of liability. The district court concluded that factual issues remained, and, without explicitly conducting a qualified immunity analysis, denied both motions. The officers appeal that denial, raising one issue: whether the district court erred in implicitly concluding that they violated clearly established law.[3]

III. *Discussion*

Qualified immunity shields government officials performing discretionary functions from civil litigation and damage liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[4] Under this standard, a plaintiff must show that "when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993).

A. False Arrest

---

[2]Gold also asserted various state law claims against the officers and against the City of Miami. Those claims are not involved in this appeal.

[3]We review this legal issue de novo. *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1556 (11th Cir.1993).

> We reject Gold's argument that we do not have jurisdiction to decide this issue since the district court did not explicitly conduct a qualified immunity analysis. Implicit in the district court's denial of summary judgment was a conclusion that the defendants violated clearly established law. *See Behrens v. Pelletier,* --- U.S. ----, ----, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996); *Foy v. Holston,* 94 F.3d 1528, 1531 n. 3 (11th Cir.1996).

[4]The parties do not dispute that the officers were acting within their discretionary authority at all relevant times.

We first determine whether the officers are entitled to qualified immunity on Gold's claim that the officers violated his First, Fourth, and Fourteenth Amendment rights by falsely arresting him for disorderly conduct. In making this determination, the central issue is whether, on the date of Gold's arrest, the officers had arguable probable cause to believe that Gold had committed the offense of disorderly conduct. *See Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990). The standard for arguable probable cause is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *See Eubanks v. Gerwen,* 40 F.3d 1157, 1160 (11th Cir.1994). As we have emphasized before, arguable probable cause is distinct from actual probable cause. *See Post,* 7 F.3d at 1559.

Florida statutory law defines disorderly conduct as "acts [that] ... are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or ... brawling or fighting, or ... conduct [that] constitute[s] a breach of the peace or disorderly conduct...." *See* FLA. STAT. § 877.03 (1994). To avoid First Amendment concerns in cases involving speech, the Florida Supreme Court strictly limited the law to apply in such cases only where the speech, by its very utterance, " "inflict[s] injury or tend[s] to incite an immediate breach of the peace ...' " *See State v. Saunders,* 339 So.2d 641, 644 (Fla.1976)(quoting *White v. State,* 330 So.2d 3, 7 (Fla.1976)).[5]

Based on this limitation, the Florida Supreme Court has reversed convictions for disorderly conduct where a defendant merely directed profane language at police officers in the presence of others, *see Morris v. State,* 335 So.2d 1, 2 (Fla.1976), and where defendants made threatening comments to and voiced "intemperate expletives" near police officers, *see Gonzales v. City of Belle Glade,* 287 So.2d 669, 670-71 (Fla.1973). In both cases, the court made it clear that a person does

---

[5]The Florida Supreme Court held that the disorderly conduct statute also could apply, without violating the First Amendment, in speech cases where the speech is known to be false and "creates a clear and present danger of bodily harm to others," such as shouts of fire in a crowded theater. *See State v. Saunders,* 339 So.2d 641, 644 (Fla.1976).

not violate the disorderly conduct law merely by annoying those around them or by employing profane language to express outrage. However, the court also made it clear that violation of the disorderly conduct law largely depends on the facts and circumstances of each case, noting that " "[i]t is the degree of loudness, and the circumstances [under] which [the speech is] uttered, [that] takes [it] out of the constitutionally protected area.' " *See Morris,* 335 So.2d at 2 (quoting *White,* 330 So.2d at 6).

The fact-intensive nature of the constitutional inquiry accounts for the varying views in the Florida appellate courts of what constitutes legally proscribed disorderly conduct. In one case, a Florida appellate court affirmed the disorderly conduct conviction of a juvenile who directed profanities at a police officer in a loud voice and in the presence of others. *See L.J.M. v. State,* 541 So.2d 1321, 1322-23 (Fla. 1st DCA 1989). According to the court, "[i]f this country is to preserve in its citizens any sense of discipline and respect for others in our society, the [F]irst [A]mendment simply cannot be construed to condone this type of conduct." *See id.* at 1323. In another case, the same appellate court reversed a delinquency adjudication based on disorderly conduct of a juvenile who leaned from a car window and yelled unprovoked profanities at nearby police officers. *See D.C.E. v. State,* 381 So.2d 1097, 1098-99 (Fla. 1st DCA 1979).

Given that what constitutes legally proscribed disorderly conduct is subject to great subjective interpretation of specific facts—for example, the words used, the tone used, the decibels used, and the reaction of onlookers—we are constrained to conclude that a reasonable officer in the same circumstances and possessing the same knowledge as the officers in this case could have reasonably believed that probable cause existed to arrest Gold for disorderly conduct. The evidence, viewed in the light most favorable to Gold, reflects that Gold twice used profanities in a loud voice, in a public place, and in the presence of others. At the time, no cases clearly established that those actions did not constitute legally proscribed disorderly conduct.

We pause at this point to reemphasize that the arguable probable cause inquiry is distinct from the actual probable cause inquiry. It is clear from the facts viewed in the light most favorable

5

to Gold that the officers did not have actual probable cause to arrest Gold for disorderly conduct.[6] That said, the officers nonetheless are entitled to qualified immunity.[7] As the Supreme Court has stated, "[t]he qualified immunity standard "gives ample room for mistaken judgments'...." *See Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)(quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986)). "This accommodation for reasonable error exists because "officials should not err always on the side of caution' because they fear being sued." *Id.;* 502 U.S. at 229, 112 S.Ct. at 537 (quoting *Davis v. Scherer,* 468 U.S. 183, 196, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984)).

## B. Excessive Force

We next determine whether the officers are entitled to qualified immunity on Gold's claim that the officers violated his Fourth Amendment right to be free from excessive force by applying the handcuffs too tightly and by leaving them that way for an unreasonable amount of time. Whether an officer used excessive force turns on a number of factors, such as "the severity of the crime, whether the suspect pose[d] an immediate threat, and whether the suspect [was] resisting or fleeing. Use of force must be judged on a case-by-case basis...." *Post,* 7 F.3d at 1559 (citation omitted). Because of this lack of a bright-line standard, "qualified immunity applies unless application of the standard would inevitably lead" a reasonable officer in the defendant's position to conclude that the force was unlawful. *See id.*

Here, the facts viewed in the light most favorable to Gold show that Gold experienced pain from the handcuffs for roughly twenty minutes and that Gold suffered only skin abrasions for which he did not seek medical treatment. The minor nature of this injury reflects that minimal force was used to apply the handcuffs. Certainly, these circumstances would not "inevitably lead" a reasonable

[6]In Gold's case against the City of Miami, a jury in fact found that the officers did not have probable cause to arrest Gold for disorderly conduct. It rendered a verdict of $ 26,500.00 in favor of Gold.

[7]Gold did not argue to the district court, and does not argue on appeal, that the officers violated clearly established law by falsely arresting him for resisting arrest without violence. We therefore do not address that issue here.

6

officer in the officers' positions to conclude that the force used to apply the handcuffs was unlawful. Accordingly, the officers are entitled to qualified immunity on Gold's excessive force claim.

## C. Deliberate Indifference

Last, we determine whether now-former Police Chief Ross is entitled to qualified immunity on Gold's § 1983 claim that Ross violated his First, Fourth, and Fourteenth Amendment rights by failing to train subordinate officers regarding the constitutional limitations of Florida's disorderly conduct statute and regarding the proper response to an arrestee's handcuff complaints.

A supervisor will be denied qualified immunity from a § 1983 claim where "a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff and his conduct was causally related to the constitutional violation committed by his subordinate." *McKinney,* 997 F.2d at 1443. Here, the facts viewed in the light most favorable to Gold reflect that Ross gave no training to the officers on the constitutional limitations of the disorderly conduct statute or on the proper response to an arrestee's handcuff complaints. We are not convinced that a reasonable person in Ross's position would have known that such a failure infringed on constitutional rights. Therefore, Ross is entitled to qualified immunity on this claim.

## IV. *Conclusion*

For the reasons stated above, we conclude that Suarez, Perez, Campbell, and Ross are entitled to qualified immunity on each of Gold's federal claims. Accordingly, we reverse the district court's denial of their motion for summary judgment on those claims and remand to the district court for further proceedings.

REVERSED and REMANDED.