[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14751
_____

D.C. Docket No. 1:16-cv-20501-FAM


RUBEN SEBASTIAN,

Plaintiff -Appellee,

versus

JAVIER ORTIZ,

Defendant - Appellant,

JAY GROSSMAN,
DANIEL CROCKER, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 14, 2019)

Before MARCUS and DUBINA, Circuit Judges, and GOLDBERG,[*] Judge.

MARCUS, Circuit Judge:

In this interlocutory appeal, Lieutenant Javier Ortiz of the Miami Police Department challenges the district court's denial of his motion to dismiss this civil rights excessive force case arising out of a routine traffic stop. The appellee, Ruben Sebastian, alleges that during the course of the stop and his subsequent arrest, Ortiz restrained him with handcuffs for more than five hours "in a manner purposely intended to cause pain and injury." On account of the officer's misconduct, Sebastian claims to have suffered nerve damage and the permanent loss of sensation in his hands and wrists. This case presents the question whether a police officer is entitled to qualified immunity when he intentionally applies unnecessarily tight handcuffs to an arrestee who is neither resisting arrest nor attempting to flee, thereby causing serious and permanent injuries. After careful review of the entire record, we agree with the district court that the appellant was not entitled to qualified immunity.

## I.

Since we are reviewing the denial of Lieutenant Ortiz's motion to dismiss, we accept the facts in the amended complaint as true and view them in the light

---

[*] Honorable Richard W. Goldberg, Judge for the United States Court of International Trade, sitting by designation.

most favorable to the plaintiff.  On July 7, 2015, Ruben Sebastian was pulled over for a traffic violation while driving on the Rickenbacker Causeway in the city of Miami.  Officer Jay Grossman of the City of Miami Police Department made the stop.  Grossman approached Sebastian's window, told him he believed Sebastian had exceeded the speed limit, and requested to check the tint on the front windows of the vehicle to determine compliance with Florida law.  Sebastian complied but he refused Officer Grossman permission to search the interior of the vehicle.  The officer claimed that the tint on the rear windows prevented him from seeing into the back of the car; Sebastian asserted, however, that the entire interior was readily visible because the front windows of the car were rolled down.  After Sebastian denied consent to the search, Officer Grossman summoned Lieutenant Javier Ortiz[1] of the Miami Police Department for backup.

When Ortiz arrived at the scene, he too asked for permission to search the interior of the vehicle.  Sebastian again refused, and Ortiz allegedly "became enraged," opened the car door, and removed Sebastian from the vehicle.  First Am. Compl. ¶ 24.  By this time, a third officer ("Officer Doe") had arrived at the scene. Either Ortiz or Doe then restrained Sebastian, pressed his face into the hood of a police car, and placed him in metal handcuffs.  Sebastian claims that the handcuffs

---

[1] Ortiz has recently been promoted to the rank of Captain.  We use Ortiz's title at the time of the events for consistency and ease of reference.

were engaged "in a manner purposely intended to cause pain and injury, cutting off the circulation in his hands, and cutting into the skin on his wrists." Id. ¶ 25. Sebastian complained, and either Officer Doe or Ortiz responded that "he knew of a way to make them tighter." Id.

While Sebastian was restrained, the officers began to search the vehicle. Sebastian informed the officers that he had a firearm in the car, and with his assistance the officers located the gun in the side pocket of the driver side door, secured in its holster. Upon retrieving the firearm, which Sebastian had a permit to carry, Lieutenant Ortiz or Officer Grossman told Sebastian that he "would not that day, or ever, return to his job" as a security guard employed by Miami-Dade County. Id. ¶ 30.

Lieutenant Ortiz then directed that a fourth officer, Daniel Crocker, place Sebastian in his vehicle for transportation to the police station. Doe or Ortiz replaced the metal handcuffs with plastic flex cuffs, again, allegedly, "intentionally tightening the cuffs in a manner purposely and wantonly intended to cause pain and further injury." Id. ¶ 32. Doe or Ortiz placed Sebastian in Officer Crocker's vehicle "in a position and manner that increased the pain caused by the over tightened flex-cuffs," and Crocker raised the windows and left Sebastian inside. Id. As the temperature inside the vehicle began to rise, Sebastian asked to have the windows rolled down; Officer Crocker rolled a rear window down one or two

inches.  He refused, however, to open the window further or loosen the flex cuffs as Sebastian complained that he was beginning to lose feeling in his hands. Sebastian remained in the car for an unspecified period of time, and after the completion of the search he was transported to a police station where he was detained for more than five hours, still handcuffed behind his back.  He was charged in two counts with Resisting or Obstructing an Officer Without Violence under Fla. Stat. § 843.02 and one count of Reckless Display of a Firearm in violation of Fla. Stat. § 790.10.  The charges were later dropped by the State Attorney, although Sebastian pleaded guilty to a noncriminal speeding violation under Fla. Stat. § 316.189(1).

Sebastian further alleges that he "continues to suffer nerve damage to his hands and wrists, emotional pain and suffering, loss of employment, and reputational damages" as a result of the handcuffing and arrest.  First Am. Compl. ¶ 44.  His employment with Miami-Dade County was in fact terminated, and he has been unable to find work as a security guard elsewhere.  In February 2016, Sebastian commenced this lawsuit in the United States District Court for the Southern District of Florida against each of the officers -- Ortiz, Grossman, Doe, and Crocker -- the City of Miami, and Chief of Police Rodolfo Llanes on a number of theories of liability.  As relevant here, he asserted claims of excessive force in

5

violation of the Fourth Amendment and supervisory liability for failure to stop unlawful acts against Lieutenant Ortiz.

Ortiz moved to dismiss the charges on the ground of qualified immunity. The district court first concluded that the officers were entitled to make a custodial arrest because they had probable cause to believe Sebastian was speeding in violation of Fla. Stat. § 316.189(1), and this Court has held that officers are permitted to make custodial arrests for noncriminal offenses in Florida. See, e.g., Durruthy v. Pastor, 351 F.3d 1080, 1089 (11th Cir. 2003) (approving the arrest of a pedestrian for walking on the roadway where sidewalks were available for use); see also Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). The trial court rejected Sebastian's argument that probable cause to arrest was vitiated since the officers decided to make the arrest solely because of his objections to the search, concluding that "the officers' subjective intentions and motivations play no role in the probable cause analysis." Under the "fellow officer rule," Grossman's probable cause to arrest Sebastian for speeding was imputed to Ortiz and the other officers, even though they arrived on the scene later.

To begin the excessive force analysis, the district court rejected Sebastian's argument that any use of force was unlawful because the arrest itself was lawful and law enforcement officers are entitled to use some degree of force in effecting a lawful arrest. Indeed, this Court has recognized that a "typical arrest involves

6

some force and injury." See, e.g., Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002). Whether the use of force in making an arrest is excessive turns on multiple factors including the severity of the crime and whether the suspect posed a threat, was resisting, or fleeing. Applying this standard, the trial court held that the severe injuries Sebastian suffered from handcuffing provided a sufficient basis to deny qualified immunity and permit the claim to move forward to discovery. It concluded, however, that confining Sebastian inside the hot, unventilated car was not excessive force, especially since he suffered no lasting injuries from this conduct.

The district court also determined that Sebastian had sufficiently alleged a supervisory liability claim against Lieutenant Ortiz for failure to stop unlawful acts by his officers. Sebastian was unsure whether Lieutenant Ortiz or Officer Doe actually applied the handcuffs, and his supervisory claim alleges that Ortiz failed to stop Doe's use of excessive force. Because the court found that Sebastian sufficiently alleged the underlying excessive force claim, he had sufficiently alleged this supervisory claim as well.

II.

We review the denial of qualified immunity at the motion to dismiss stage de novo. Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). We are required to accept all allegations in the complaint as true and draw all reasonable inferences

7

in the plaintiff's favor.  St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).  Our review is "limited to the four corners of the complaint."  Id.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  It is designed to permit officials to perform their discretionary duties "without the fear of personal liability or harassing litigation."  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  The doctrine therefore "protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'"  Id. (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001), vacated 537 U.S. 801 (2002)).  Because qualified immunity protects officials from suit as well as liability, courts must determine the validity of a claimed qualified immunity defense at the earliest possible time.  Id.

To deny qualified immunity at the motion to dismiss stage, we must conclude both that the allegations in the complaint, accepted as true, establish a constitutional violation and that the constitutional violation was "clearly established."  Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010).  For these purposes, clearly established law consists of holdings of the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state.  See Jenkins v.

8

Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).  A "public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred'" to receive the benefit of qualified immunity.  Lee, 284 F.3d at 1194 (quoting Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991)).  Here, no one disputes that Ortiz was acting within the scope of his discretionary authority when he arrived at the scene and ultimately arrested Sebastian.  After the defendant makes this showing, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  Id.

Sebastian argues that Lieutenant Ortiz is not entitled to qualified immunity because he violated the clearly established law prohibiting the use of excessive force in making an arrest.[2]  More specifically, Sebastian points to our body of cases holding "that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."  Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008).

---

[2] Sebastian also renews his argument that the use of force was categorically unlawful because the traffic stop was unlawfully extended and Lieutenant Ortiz was not entitled to make an arrest. See Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000) ("[I]f a stop or arrest is illegal, then there is no basis for any threat or any use of force . . . .").  We decline to address this argument because under this Court's precedent, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."  Id.; Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995).  Only Sebastian's excessive force and supervisory failure to intervene claims are before this Court on appeal.

To determine whether the force used is excessive, the Supreme Court has directed us to consider many factors "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). Our cases have added "the relationship between the need and amount of force used" and "the extent of the injury inflicted" as important considerations. Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). "Because this standard establishes no bright line, qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the officer's] position to conclude the force was unlawful." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994). Applying this test, "[w]e have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." Stephens v. DeGiovanni, 852 F.3d 1298, 1328 (11th Cir. 2017) (quoting Saunders v. Duke, 766 F.3d 1262, 1265 (11th Cir. 2014)).

Lieutenant Ortiz argues that he did not use excessive force because the force was de minimis. "[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin

v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).  This is because the right to make an arrest necessarily carries with it the right to use "some degree of physical coercion or threat thereof," and "the typical arrest involves some force and injury." Rodriguez, 280 F.3d at 1351 (quoting Graham, 490 U.S. at 396).  Drawing a corollary to this principle, we have held that "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." See id. at 1351.

We have applied the de minimis force principle to handcuffing and granted officers qualified immunity in a series of cases.  First, in Gold v. City of Miami, 121 F.3d 1442 (11th Cir. 1997), we granted qualified immunity when a plaintiff alleged that officers used excessive force by "applying the handcuffs too tightly and by leaving them that way for an unreasonable amount of time."  Id. at 1446; see id. at 1447.  The Court noted that the plaintiff "experienced pain from the handcuffs for roughly twenty minutes" but he "suffered only skin abrasions for which he did not seek medical treatment."  Id. at 1446.  A panel of this Court concluded that "[t]he minor nature of this injury reflects that minimal force was used," and therefore the officers were entitled to qualified immunity.  Id. at 1446–47.  Similarly, in Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000), the plaintiff brought an excessive force claim after an officer shoved him against a vehicle, pushed his knee into his back and his head against the vehicle, searched him in an

11

uncomfortable manner, then placed him in handcuffs. Id. at 1258 n.4. The plaintiff ended up only with "minor bruising [that] quickly disappeared without treatment," so again we found that these facts fell "within the ambit of the de minimis force principle" applied in Gold. Id.

Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002), involved more serious injuries and this Court still granted qualified immunity. During the course of a lawful arrest, an officer grabbed the plaintiff's arm and twisted it around his back in order to apply handcuffs, using what the Court deemed "a relatively common and ordinarily accepted non-excessive way to detain an arrestee." Id. at 1351. But because the plaintiff had recently had surgery on his elbow, the technique caused the displacement of a bone fragment and this injury eventually led to the amputation of the lower part of the plaintiff's arm. Id. Still, the Court granted the officer qualified immunity because there was no reason to think that the officer knew of the plaintiff's surgery or knew that handcuffing the plaintiff in that way would aggravate the preexisting condition. Id. Lieutenant Ortiz submits that these cases imply the rule that "otherwise de minimis force could possibly be actionable only if the officer knew that the particular action would cause serious injury to a particularly vulnerable person, even when that same action would not have harmed a less vulnerable arrestee." Reply Br. of Appellant Javier Ortiz 5.

12

Nothing in these cases, however, addressed serious and substantial injury intentionally and gratuitously inflicted on an individual of ordinary vulnerability. "The nature and extent of physical injuries sustained by a plaintiff" are key factors in determining whether the use of force was reasonable, and here Sebastian has alleged serious, permanent injuries. Stephens, 852 F.3d at 1325. He claims that the handcuffs -- which were left in place for more than five hours after he arrived at the station, long after his first complaints -- "caused constriction of the blood circulation" and "nerve damage," leading to the "permanent loss of sensation" in his hands. First Am. Compl. ¶ 67. The seriousness and permanence of Sebastian's injuries takes his claim out of the de minimis category. Lieutenant Ortiz effectively argues that handcuffing alone can never constitute excessive force, regardless of the need for the use of force under the circumstances or the extent of the injuries inflicted, which is a proposition that this Court has never endorsed. If an officer, for instance, needlessly handcuffed an injured driver who crashed his vehicle while speeding and seriously aggravated the injuries caused by the accident, the fact that the officer harmed the driver by "merely" applying handcuffs would not necessarily bar an excessive force claim.

Notably, all of the Graham factors -- the severity of the crime, the safety risk posed to the officers and others, and whether the plaintiff was resisting arrest or attempting to flee or evade the officers -- weigh decidedly in Sebastian's favor.

13

See Graham, 490 U.S. at 396.  Speeding is a minor, noncriminal offense.  If "more force is appropriate for a more serious offense and less force is appropriate for a less serious one," then a minimal degree of force was appropriate here.  Lee, 284 F.3d at 1198.  Although an officer is entitled to make a custodial arrest for this kind of violation under Atwater and unsafe driving of course poses some risk to public safety, speeding is far from the most serious offense an officer can expect to encounter on patrol.  What's more, there is not the slightest indication in this record that Sebastian posed a threat to officer safety or to anyone else, or was a flight risk at any time during the interaction.  All he did was refuse the officers' requests for permission to search his vehicle, and he was nevertheless subjected to force that left him with permanent injuries.  This is enough to establish that Sebastian's Fourth Amendment right to be free from the excessive use of force was violated under the exceptional circumstances of this case.

Now to the "clearly established" question.  A plaintiff can show the violation of a clearly established right in a few ways.  See Vinyard, 311 F.3d at 1350–52.  First, and most commonly, a plaintiff can point to a case with "materially similar" facts decided by the Supreme Court, the Court of Appeals, or the highest court of the relevant state.  Id. at 1352.  Or, a plaintiff can "show that a broader, clearly established principle should control the novel facts in this situation."  Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).  The final, and often most

14

difficult option is to demonstrate that "the official's conduct 'was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point.'" Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000) (quoting Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997)).

Our case law establishes that "gratuitous use of force when a criminal suspect is not resisting arrest" may constitute excessive force. Hadley, 526 F.3d at 1330. Thus, for example, in Smith v. Mattox, 127 F.3d 1416 (11th Cir. 1997), an officer approached Smith while investigating a tip that described someone with Smith's characteristics as being in the possession of cocaine. Id. at 1417. Smith raised a baseball bat in a threatening posture toward the officer and then fled. Id. at 1418. After a short chase, Smith "docilely submitted to arrest" when an officer ordered him to "get down." Id. The officer then put his knee into Smith's back while he was on the ground, pulled his arm behind his back to apply handcuffs, "and then with a grunt and a blow -- but no sign of anger -- [the officer] broke Smith's arm." Id. The Court held that the officer was not entitled to qualified immunity because the "broken arm was obviously unnecessary to restrain" Smith when he "was offering no resistance at all." Id. at 1420. This pushed the case into "the slender category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying caselaw." Id.

15

Again, in Stephens v. DeGiovanni, 852 F.3d 1298 (11th Cir. 2017), this Court denied qualified immunity when an officer "slugged" the plaintiff in the chest and threw him into a car-door jamb in the course of a misdemeanor arrest while the plaintiff was obeying the officer's commands and responding to his questions. Id. at 1308. Considered alongside the minor nature of the offense, the Court found that the nature and extent of the plaintiff's injuries -- a cervical sprain, a torn rotator cuff, and a sprained wrist, among others -- were "the most telling factor[s]" in evaluating whether the force used was excessive. Id. at 1326. The Court held that "no particularized preexisting case law was necessary for it to be clearly established" that the officer used excessive force on these facts. Id. at 1328 (quoting Priester, 208 F.3d at 927).

Still again, in Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002), we denied qualified immunity to an officer who violently slammed an arrestee's head into the trunk of her vehicle after she was handcuffed. Id. at 1200. The Court relied on "the clear and obvious principle that once an arrest has been fully secured and any potential danger or risk of flight vitiated, a police officer cannot employ the severe and unnecessary force allegedly used." Id. No reasonable officer could have believed that use of force was legal under the circumstances, so this officer was not entitled to qualified immunity. And in Hadley v. Gutierrez, 526 F.3d 1324 (11th Cir. 2008), we likewise denied qualified immunity to a police officer who punched

16

an arrestee in the stomach after he was handcuffed and while he was not resisting, even though the suspect appeared to be "high on cocaine and paranoid." Id. at 1330. The Court relied on our "cases hold[ing] that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force," such as Lee. Id.

So, our case law is clear that serious and substantial injuries caused during a suspect's arrest when a suspect is neither resisting an officer's commands nor posing a risk of flight may substantiate an excessive force claim. Although we have never addressed a claim factually identical to Sebastian's, Smith established that if an arrestee demonstrates compliance, but the officer nonetheless inflicts gratuitous and substantial injury using ordinary arrest tactics, then the officer may have used excessive force. This was true even though the plaintiff in Smith, unlike Sebastian, was initially recalcitrant and even acted aggressively toward the officer. Lifting an arrestee's arm behind his back in order to handcuff him is a routine arrest technique, but a panel of this Court found that the officer clearly violated the Fourth Amendment because he deployed it with undue severity to an obedient arrestee. Here, the facts as alleged in the complaint lead inescapably to the conclusion that the substantial injuries were inflicted on Sebastian in a similarly gratuitous manner, not as an incidental effect of legitimate law enforcement actions.

17

Moreover, the Supreme Court has explained that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). In Hope v. Pelzer a prisoner sued three guards, alleging that the prison's practice of handcuffing inmates to hitching posts for hours at a time in the hot sun when they were disobedient or disruptive while working on a chain gang violated the Eighth Amendment. Id. at 733–35. The Supreme Court held that the guards were not entitled to qualified immunity despite there being no precedent clearly on point. Id. at 746. What the Court required was some established law that gave the officials "fair warning" that their treatment of the inmate was unconstitutional. Id. at 741. In some cases, the Court said, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" United States v. Lanier, 520 U.S. 259, 271 (1997) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Even though this Court has not addressed a similar fact pattern where substantial injuries were inflicted on an individual with no preexisting sensitivity by handcuffing alone, our case law bars Lieutenant Ortiz's alleged actions with sufficient clarity to put any reasonable officer on notice that this conduct constituted excessive force. "Graham dictates unambiguously that the force used

18

by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force," Lee, 284 F.3d at 1198, and under the unusual facts alleged by Sebastian we have no doubt that the force was objectively disproportionate and altogether gratuitous. We do not mean to give law enforcement officers pause each time they employ handcuffs in the heat of an arrest, and only the most exceptional circumstances will permit an excessive force claim on the basis of handcuffing alone. The peculiar facts of this case, not least the reapplication of excessively tightened cuffs after Sebastian first complained and the five-hour period Sebastian spent restrained in the cuffs at the station after his arrest, cross over "the hazy border between excessive and acceptable force" such that any reasonable officer would know he had violated the Constitution. Priester, 208 F.3d at 926. Taking the allegations in the complaint as true, the district court did not err by refusing to dismiss the complaint and in holding that Lieutenant Ortiz was not entitled to qualified immunity,

The issue of qualified immunity as to the supervisory liability claim can be dealt with quickly. "[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998) (quoting Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986)). To be held liable, the officer must both be "in a

position to intervene" and "fail[] to do so." Priester, 208 F.3d at 924. Of course, there also must be an underlying constitutional violation. Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009). Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed.

This claim is premised on the idea that Sebastian is unsure which officer -- Lieutenant Ortiz or Officer Doe -- actually applied the handcuffs. Sebastian alleges that if it was Doe, Ortiz is liable for failing to intervene in Doe's use of excessive force. As the district court correctly noted, the failure to intervene claim is therefore wholly dependent on the underlying excessive force claim. The parties do not dispute, at the motion to dismiss stage, whether Lieutenant Ortiz was in a position to intervene or whether he failed to do so, assuming that the unidentified officer actually applied the handcuffs. The only dispute is whether a constitutional violation occurred, so this issue necessarily turns on the analysis we have already set forth. Because Sebastian has adequately pleaded a clearly established constitutional violation of his right to be free from excessive force, Lieutenant Ortiz is not entitled to qualified immunity on the failure to intervene claim.

The district court did not err in denying Lieutenant Ortiz qualified immunity on either claim.

**AFFIRMED.**