WILSON, Circuit Judge, dissenting:
The majority accurately points out that qualified immunity protects "all but the plainly incompetent." Maj. Op. at 1311 (quoting Malley v. Briggs , 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ). Because no competent officer would fire his weapon in the direction of a nonthreatening pet while that pet was surrounded by children, qualified immunity should not protect Officer Vickers. Therefore, I dissent.
I.
On July 10, 2014, several officers, including Deputy Sheriff Michael Vickers, initiated a search to locate and apprehend a criminal suspect, Christopher Barnett.[1]
*1324 The search led them to Amy Corbitt's property after Barnett, "whom [plaintiffs] ha[d] never met," "wandered into the area." Barnett, Damion Steward, and six children-including Corbitt's ten-year-old child S.D.C., and two children under the age of three-were on the property's front yard. The officers detained Barnett and ordered everyone to get on the ground. An unidentified officer handcuffed Steward and held a gun against his back. The detained children "were [also] held at gun point, each having an officer forcefully shove the barrel of a loaded gun into their backs."
While Barnett, Damion, and the children were detained on the lawn, Vickers spotted the Corbitt family pet, a dog named Bruce. Although no one "appear[ed] to be threatened by [Bruce's] presence," Vickers attempted to shoot the dog. He missed, and Bruce retreated under the Corbitt's residence. Roughly ten seconds later, Bruce reemerged and was "approaching his owners" on the yard. Vickers fired another shot, again missing the pet. The errant bullet struck S.D.C. behind the knee as the child lay in a "face down position on the ground at the request of defendants." Importantly, S.D.C. was "readily viewable" a mere eighteen inches from Vickers at the time the shot was fired, and "[o]ther minor children were [ ] within only a few feet of [ ] Vickers." As a result of the bullet wound, S.D.C. suffered severe physical pain and mental trauma.
II.
To overcome a qualified immunity defense, the plaintiff must (1) "establish that the defendant violated a constitutional right" and (2) demonstrate that the violated right was "clearly established." Griffin Indus., Inc. v. Irvin , 496 F.3d 1189, 1199-1200 (11th Cir. 2007). I agree with the majority's determination that Corbitt satisfied the first requirement. See Maj. Op. at 1313-15. I disagree, however, with the majority's conclusion that Corbitt failed to demonstrate that Vickers violated a "clearly established" constitutional right.
We have identified three ways a plaintiff can show that a right was clearly established at the time of the defendant's action. First, she can "show that a materially similar case has already been decided." Mercado v. City of Orlando , 407 F.3d 1152, 1159 (11th Cir. 2005). Second, she can "show that a broader, clearly established principle should control the novel facts" of a particular situation. Id. (citing Hope v. Pelzer , 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ). Third, she can show that her case "fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." Id. ; see also Lee v. Ferraro , 284 F.3d 1188, 1199 (11th Cir. 2002) (noting that, to show that a right is "clearly established," plaintiffs may show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." (citation omitted)). I believe the instant case falls within the third category.
Under this third recognized category, a plaintiff in an excessive force case can overcome an officer's qualified immunity defense "only if the standards set forth in Graham and our own case law inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful." Lee , 284 F.3d at 1199 (alteration in original) (citation and internal quotation marks omitted). In Graham v. Connor , the Supreme Court held that the reasonableness analysis "requires careful attention to the facts and circumstances of each particular case," including the severity of the *1325 crime at issue, the safety interests of officers and others, and any risk of violence or flight by a suspect. 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citation omitted).
Consider the present facts and circumstances: officers arrived at a home and found the subject of their search. At gunpoint, the officers ordered the suspect and all persons in the area-including six children-to the ground. Everyone complied. A nonthreatening family pet was present on the scene; there is nothing to suggest that this pet acted with hostility or threatened the safety of anyone-including the officers. With all the children and the suspect still lying on the ground pursuant to the officers' commands, Officer Vickers shot at the family pet. He missed. He waited. He shot again. He missed again, instead striking a child who had been-at all times-lying within arm's reach of the officer.
This conduct-discharging a lethal weapon at a nonthreatening pet that was surrounded by children[2] -is plainly unreasonable. The nonthreatening nature of the pet is crucial to this conclusion.[3] We have consistently denied qualified immunity when the defendant-officer exhibited excessive force in the face of no apparent threat. See cf. Saunders v. Duke , 766 F.3d 1262, 1265 (11th Cir. 2014) ("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and *1326 obeying commands."); see, e.g. , Slicker v. Jackson , 215 F.3d 1225, 1227 (11th Cir. 2000) (denying qualified immunity to officer who arrested plaintiff, placed him in handcuffs and then, after he had been fully secured, slammed his head into the pavement); Priester v. City of Riviera Beach, Fla. , 208 F.3d 919, 926-27 (11th Cir. 2000) (denying qualified immunity to officer who allowed police dog to attack arrestee who was already subdued and lying on the ground); Smith v. Mattox , 127 F.3d 1416, 1418-20 (11th Cir. 1997) (denying qualified immunity to officer who broke plaintiff's arm after plaintiff "docilely submitted" to officer's request to "get down"). It is also relevant that Officer Vickers was a mere foot and a half from S.D.C. and was only a few feet from several other children. Nonetheless, facing no apparent threat, Officer Vickers chose to fire his lethal weapon in the direction of these children.[4] No reasonable officer would engage in such recklessness and no reasonable officer would think such recklessness was lawful. Therefore, I agree with the district court that Officer Vickers should not be entitled to qualified immunity. Lee , 284 F.3d at 1199.
I respectfully dissent.

The summary of the facts is based on the allegations made in the Complaint. See Sebastian v. Ortiz , 918 F.3d 1301, 1307 (11th Cir. 2019) (noting that, at the motion to dismiss stage, "[w]e are required to accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor").

The majority maintains that the Complaint does not "contain allegations of actual fact to support the dissent's assertion that the dog was surrounded by children when Vickers fired at it." Maj. Op. at 1322 n.18. But there are allegations in the Complaint that, considered together, lead to the reasonable inference that the dog was surrounded by children at the time Officer Vickers fired the shot. See Sebastian , 918 F.3d at 1307 (noting that, at the motion to dismiss stage, we must draw all reasonable inferences in favor of the nonmoving party). Specifically, the Complaint alleges that the dog was "approaching his owners," including S.D.C., on the yard when Officer Vickers fired. It also alleges that S.D.C. "was approximately eighteen inches from Defendant Vickers" and "[o]ther minor children were [ ] within only a few feet of Defendant Vickers" when Officer Vickers fired. Finally, the Complaint alleges that Officer Vickers fired a shot at the dog but instead hit S.D.C. Based on these three allegations-(1) that the dog was approaching S.D.C., (2) that Officer Vickers was a few feet from S.D.C. and the other children, and (3) that Officer Vickers fired a shot at the dog, but instead struck a child-we can, and should, reasonably infer that the dog and the children were closely situated.

The majority declined to accept Corbitt's allegations that the dog was nonthreatening, reasoning that the allegations were "conclusory." Maj. Op. at 1323-24. I disagree with such a characterization. At this stage, we must take plaintiff's allegations as true. Sebastian , 918 F.3d at 1307 ; St. George v. Pinellas County , 285 F.3d 1334, 1337 (11th Cir. 2002) ("While there may be a dispute as to whether the alleged facts are the actual facts, in reviewing the grant of a motion to dismiss, we are required to accept the allegations in the complaint as true."). We are therefore obligated to accept that the dog "posed no threat," that "[no]one appear[ed] to be threatened by its presence," and that it was merely "approaching his owners" at the time Officer Vickers fired. Instead, the majority appears to credit Officer Vickers' own conclusory account-that he shot the dog "because it was approaching him, the officers, and the detained bystanders in a manner that led him to conclude that he needed to subdue it." See Maj. Op. at 1322 (concluding that some officers may find it reasonable to subdue a dog "roaming freely at the scene of an active arrest"). Neither Officer Vickers nor the majority elaborates on the dog's behavior or explains how its behavior was so outrageous as to warrant shooting into a group of children. And even if such an explanation existed, we are required to accept Corbitt's allegations as true . It is not for us to weigh the likelihood of either account. That is a job for the jury.

Officer Vickers emphasizes that he intended to shoot the dog and only accidentally struck S.D.C. He argues that such an inadvertent injury cannot be deemed a result of "excessive force." I do not dispute that the shooting of S.D.C. was accidental. I maintain that Officer Vickers' intentional action-shooting at a dog that was surrounded by children-was unreasonable.