[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 21-10397
Non-Argument Calendar

_____

D.C. Docket No. 4:20-cv-00134-ELR

DUSTIN ORR,

Plaintiff - Appellant,

versus

DEPUTY JAMES ROGERS,
DEPUTY JOHNATHAN BRANNON,
DEPUTY GEORGE WOOTEN,
LARRY STAGG,
STAGG LAW FIRM, LLC,
SUMMER ORR,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 8, 2021)

Before BRANCH, GRANT and MARCUS, Circuit Judges.

PER CURIAM:

Dustin Orr appeals from the district court's grant of a motion to dismiss in favor of Deputies James Rogers, Johnathan Brannon, and George Wooten (collectively, "the Deputies") for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Orr brought this suit under 42 U.S.C. § 1983 for an alleged violation of his Fourth and Fourteenth Amendment rights. His allegations stem from the Deputies' execution of a court order -- at the home of Orr and his wife, Summer Orr, who had filed for divorce -- that instructed the Deputies to search Orr and seize certain property and turn it over to Summer Orr. On appeal, Orr argues that the district court erroneously dismissed his Fourth Amendment claim for failure to state a claim upon concluding that the Deputies were entitled to qualified immunity because they did not violate a clearly established right. After careful review, we affirm.

The relevant background, for purposes of reviewing the grant of the Deputies' motion to dismiss, is this. On April 9, 2019, Summer Orr's attorney filed a complaint for divorce in the Superior Court of Catoosa County, Georgia. Along with the complaint, the attorney submitted a proposed order that would, in part, require a deputy or other process server to frisk Orr and seize any monetary funds over $200 and turn them over to Summer Orr. This included money in Orr's wallet, though Orr would be allowed to keep his driver's license, credit cards, and "anything else other than cash, money order(s) or Cashier's checks." The proposed order also

2

instructed Orr to turn over certain property to Summer Orr. That same day, following an ex parte hearing, a superior court judge signed the proposed order. The order provided that it was issued "UPON CONSIDERATION of evidence presented on this date and for good cause shown."

The next day, the Deputies served Orr with the divorce summons and complaint, along with the ex parte order. According to Orr, Summer Orr still lived with him, and she allowed the Deputies to enter the home. At least one of the Deputies told Orr that if he did not comply with the search, he would be arrested and taken into custody. The Deputies searched Orr and seized about $19,000 in cash and keys to three vehicles, which they gave to Summer Orr. Orr was left with $200. In his complaint, Orr alleged that "[t]he Deputies, acting in concert, relied on the language contained in the Order in conducting the search of Mr. Orr's person, the seizure of his property, and the transfer of possession of said property to Mrs. Orr."

Thereafter, Orr brought this suit against the Deputies, claiming that they had conducted an unreasonable search of his person and seizure of his property, in violation of the Fourth and Fourteenth Amendment.[1] He argued that the Deputies lacked probable cause and that the order was facially invalid and no reasonable officer could have reasonably relied on it. The district court granted the Deputies'

---

[1] Orr asserted other federal and state law claims against the Deputies and other defendants in his complaint, but only challenges the dismissal of his Fourth Amendment claim on appeal.

3

motion to dismiss, finding that they were entitled to qualified immunity because Orr had not alleged a violation of a clearly established right. This timely appeal follows.

We review the grant of qualified immunity at the motion to dismiss stage de novo. Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019). "We are required to accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Sebastian v. Ortiz, 918 F.3d 1301, 1307 (11th Cir. 2019). "Our review is limited to the four corners of the complaint." Id. (quotations omitted).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). "Because qualified immunity protects officials from suit as well as liability, courts must determine the validity of a claimed qualified immunity defense at the earliest possible time." Sebastian, 918 F.3d at 1307.

Under the well-defined qualified immunity framework, a "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee, 284 F.3d at 1194 (quotations omitted). Since there is no dispute that the Deputies were acting within the scope of their

4

discretionary authority during the search and seizure, the burden shifts to Orr to show that qualified immunity is not warranted. Id. To do so, Orr must prove both that the allegations in the complaint, accepted as true, establish a constitutional violation and that the constitutional violation was "clearly established." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). These two requirements may be analyzed in any order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"[C]learly established law consists of holdings of the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state." Sebastian, 918 F.3d at 1307. While a case need not be "directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quotations omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." Id. (quotations omitted). For this reason, the Supreme Court repeatedly has instructed the courts "not to define clearly established law at a high level of generality." Id. (quotations omitted). Instead, the dispositive question is "whether the violative nature of particular conduct is clearly established." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quotations omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer

5

to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." Id. (quotations and citations omitted, alteration adopted).

Under the case law, Orr could have demonstrated that the contours of his Fourth Amendment right were clearly established in three ways. One of these would be by showing that "a materially similar case has already been decided." Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012) (quotations omitted). Orr could instead have pointed to a "broader, clearly established principle that should control the novel facts of the situation." Id. (quotations omitted, alterations accepted). Finally, Orr could have shown that the officers' conduct "so obviously violate[d] the constitution that prior case law is unnecessary." Id. (quotations omitted, alterations accepted).

On the record before us, the district court did not err in holding that Orr failed to allege that the Deputies violated clearly established law when they executed the ex parte order by searching Orr and seizing and redistributing his property. As the parties seem to agree, the order was issued by a state superior court judge pursuant to Ga. Code § 19-13-4(8), which allows courts to grant protective orders that "[p]rovide for possession of personal property of the parties." There is no allegation that the Deputies seized items that were not on the list proscribed by the order, nor that they otherwise acted outside of the scope of the order. And we can find nothing in the Georgia Code or elsewhere in the case law that would have put the Deputies on notice that re-distributing marital funds in accordance with a court order would

violate a plaintiff's Fourth Amendment rights. Indeed, even Orr appears to concede that no case "materially similar" to this one exists.

As for whether there is a "broader, clearly established principle" controlling this case, again we can find none. The cases Orr cites instead stand for the proposition that an officer's reliance on a warrant must be objectively reasonable, and in some cases, a warrant may be facially invalid. See Groh v. Ramirez, 540 U.S. 551, 563 (2004) (holding that where a warrant did not particularly describe the items to be seized, no reasonable officer could believe that the warrant was valid); Malley v. Briggs, 475 U.S. 335, 344–45 (1986) (holding that an officer is not entitled to qualified immunity where his warrant application "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable"); United States v. Leon, 468 U.S. 897, 922–23 (1984) ("[T]he officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable . . . and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.") (citations and footnotes omitted); Harlow, 457 U.S. at 815–19; Camara v. Mun. Ct. of City & Cty. of San Francisco, 387 U.S. 523, 528–29 (1967). But, as we've explained, the ex parte order in this case was not a warrant

at all; the order was issued by a superior court judge pursuant to a statute authorizing protective orders, Ga. Code. § 19-13-4.[2]

Orr argues, nevertheless, that it was clearly established that the Deputies could not search him and seize his property pursuant to the order, citing State v. Burgess, 826 S.E.2d 352 (Ga. App. 2019). We disagree. For starters, Burgess is an opinion of the Georgia Court of Appeals, Georgia's intermediate appellate court, so under our binding precedent, it cannot clearly establish the law of Georgia. See Sebastian, 918 F.3d at 1307 ("[C]learly established law consists of holdings of the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state."); see also Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012) ("Under controlling law, the plaintiffs must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court.").

Moreover, even if we consider it, Burgess is distinguishable. There, a superior court judge invoked Ga. Code §§ 19-3-3 and 19-13-4 to issue an ex parte temporary protection order ("TPO"), which allowed Burgess's ex-girlfriend to take personal property from his home and ordered the sheriff to remove all firearms and explosives

---

[2] Georgia's warrant statute, by contrast, provides that "[a] search warrant shall not be issued upon the application of a private citizen or for his aid in the enforcement of personal, civil, or property rights." Ga. Code § 17-5-20(b) (emphasis added). As a Georgia court has pointed out, protective orders issued pursuant to Ga. Code §§ 19-3-3 and 19-13-4 and warrants are two distinct legal vehicles, with different requirements, and cannot be used interchangeably. State v. Burgess, 826 S.E.2d 352, 358–59 (Ga. App. 2019). Thus, Orr cannot rely on Georgia warrant cases here.

8

from the residence. Id. at 354–55. Burgess's ex-girlfriend also provided law enforcement with the locations of the firearms and explosives and told them that Burgess was selling methamphetamine. Id. After the officers discovered methamphetamine and explosive devices on the premises, Burgess was indicted. Id. The Georgia Court of Appeals held that the order was not a valid search warrant and the exclusionary rule applied to the evidence that the officers had seized. Id. at 356–61.

The court noted that the officers "were aware that they did not have a warrant to enter the premises." Id. at 360. Moreover, the order was "at most, limited to seizing firearms and explosives," but the officers exceeded the bounds of that order. Id. The court found that the "officers were engaged in a full-blown search of the entire premises without a warrant and without any exigencies of circumstance to support a determination that a warrantless search was reasonable under the circumstances or that a reasonable officer would believe that she could effectuate the search without first obtaining a warrant." Id. at 361.

In Orr's case, Summer Orr gave her consent to enter her and Orr's shared home, and the Deputies, acting within the scope of the order, conducted a search only of Orr's person to seize money and car keys. As a result, the events in this case are more like the fact pattern the court distinguished Burgess from: "a case in which the officers were merely serving the TPO and providing support for a petitioner's

9

enforcement of her right to her property or to ensure her safety." Burgess, 826 S.E.2d at 361. And most importantly, this case is unlike Burgess because the government did not attempt to use the items seized as evidence in a criminal case against Orr.[3] Burgess simply does not establish a "broader, clearly established principle" controlling this case that would support Orr's claim that the violation of his rights was clearly established.

Nor can we say that the Deputies' conduct "so obviously violate[d] the constitution that prior case law is unnecessary" for purposes of establishing that a right was clearly established. The Deputies relied on a judicial order that permitted them to search Orr's person and confiscate a particularized list of items. The Deputies executed the order and did not take any actions outside of its scope. There is "[n]o settled Fourth Amendment principle" that requires an officer to second-guess a judge in this context. White v. Pauly, 137 S. Ct. 548, 552 (2017).

---

[3] Orr says that even though the Deputies seized his property in a civil case, the standards courts apply in civil and criminal cases are the same so the district court erred by distinguishing Burgess on the basis that it involved the seizure of evidence of criminal conduct. See Malley, 475 U.S. at 344 (holding "that the same standard of objective reasonableness that we applied in the context of a suppression hearing . . . defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest"); Hope v. Pelzer, 536 U.S. 730, 739–40 (2002) (noting that the standard for determining whether an officer charged under 18 U.S.C. § 242 had "fair warning" that his conduct deprived an individual of constitutional rights is the same as the standard for evaluating whether a right was clearly established in civil litigation under 42 U.S.C. § 1983). That the same standards might apply in both contexts says nothing about whether Burgess established a broad, clearly established principle that would apply to cases like this one, that involves property seized in a divorce case.

10

In short, Orr failed to establish that the Deputies were not entitled to qualified immunity because he did not set forth any constitutional violation that was "clearly established." As for his remaining arguments -- in which he cherry picks language from the district court's opinion in order to argue that its analysis was faulty -- none are persuasive. As the record reflects, the district court cited and applied the appropriate standard to this case, accurately framing the "dispositive question": "whether it was clearly established, as a matter of law, that an objective officer could have concluded it was reasonable to execute the ex parte Order under the particular circumstances in which the Deputy Defendants acted." It then went on to address whether Orr had made a sufficient showing that the violation of his rights was "clearly established." As we've explained, our case law allows a district court to resolve a qualified immunity case on the "clearly established" prong alone, so the district court did not need to address Orr's underlying claim that his constitutional rights were violated. See Pearson, 555 U.S. at 236. And contrary to Orr's claims on appeal, the district court's analysis makes clear that it understood Orr's claim -- that the search and seizure violated his constitutional rights -- and viewed the facts in the light most favorable to Orr and considered his claim as he pled it in his complaint. Moreover, the court properly considered the controlling authority and expressly discussed "the only comparable cases that [Orr] cite[d] to," finding them distinguishable based on the "specific context of [each] case." Mullenix, 577 U.S.

11

at 12.  Indeed, as we've discussed, none of the authority Orr that relies on -- nor that we can find -- clearly establishes the violation of a right in this case.[4]

Accordingly, the district court did not err in dismissing Orr's Fourth Amendment claim after concluding that the Deputies did not violate a clearly established right, and we affirm.

**AFFIRMED.**

---

[4] Finally, we decline to consider Orr's argument that Ga. Code § 19-13-4 and other family violence sections of the Code are unconstitutional, since he did not raise this claim in district court. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).  Orr also says that the Code requires an ex parte order to be based on "the filing of a verified petition in which the petitioner alleges with specific facts that probable cause exists to establish that family violence has occurred in the past and may occur in the future."  Ga. Code § 19-13-3(b).  But he cites no authority requiring the petition to be attached to the order in order for officers to reasonably rely on it.