[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12331

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEMETRIS DUANE CLARK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:18-cr-00408-RAH-JTA-1

_____

Before WILSON, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

After a conditional guilty plea, Demetris Duane Clark appeals the district court's denial of his motion to suppress illegally seized evidence.  Clark contends that the district court erred by denying his motion to suppress when it determined that he was not subject to a Fourth Amendment seizure until Opelika Police Detective Benjamin Carswell became aware of contraband when he smelled marijuana.  First, he argues that Detective Carswell's interaction with him became a Fourth Amendment seizure the moment Detective Carswell parked his police car behind Clark's already-parked car and activated his emergency lights.  Second, he argues that Detective Carswell did not have the requisite reasonable suspicion to warrant a *Terry v. Ohio*, 392 U.S. 1 (1968), stop because Detective Carswell did not smell marijuana until after the moment of the seizure.  For the reasons stated below, we affirm.

## I.

On September 26, 2018, a federal grand jury charged Clark via indictment on one count of possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), based on events occurring on February 7, 2017, which we discuss below.

Clark then filed a motion to suppress all of the evidence recovered as a result of the stop—namely, all the drugs and

contraband seized and the self-incriminating statements he made to a police officer and made during jail telephone recordings. Clark argued that Detective Carswell did not have probable cause nor reasonable suspicion to justify a traffic stop because there was no evidence of a traffic violation or criminal activity. He asserted that no reasonable citizen in the same situation would have believed he had a choice to leave when the officer verbally commanded him to return to his car after parking behind him in a manner consistent with displaying his authority as a police officer. Clark also argued that his incriminating statement that he had marijuana in the car should have been excluded because the police officer questioned him without advising him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). He contended that, under the circumstances, a reasonable person would have felt restrained to the degree associated with a formal arrest when the officer ordered him to stay in his car and thus the subsequent incriminating statements were unlawfully obtained. And he argued that the drugs found in his bookbag were illegally seized because he did not consent to the search of the bag, stating that the officer ordered him to hand over the bag and immediately searched it without seeking consent. In support of his motion, Clark filed the dashboard camera video recording, the incident report, a *Miranda* waiver form signed by Clark, and his post-arrest statement.

The government opposed Clark's motion, arguing that there was no traffic stop because Clark pulled into a parking spot of his own volition without the police officer activating his

emergency lights or siren.  The government also argued that the officer had reasonable suspicion to detain Clark because Clark's out-of-state license plate raised suspicion due to his presence in an area near the interstate, but without stores or gas stations, where police were searching for a burglary suspect, and because he was driving in a suspicious manner.  The government further argued that it was irrelevant whether Clark had consented to the officer's search of the bookbag because the officer had probable cause to search the car and its contents due to his smelling marijuana coming from a readily movable car.

On July 29, 2020, a magistrate judge held a suppression hearing on Clark's motion, at which the government presented testimony from Detective Carswell, who was a narcotics investigator and canine handler with the City of Opelika Police Department at the time of the incident.  Detective Carswell testified as follows.  An officer broadcasted over the main police radio channel that, while investigating a burglary, he had observed a black male wearing a black hat, black shirt, and gray pants flee at the sight of the officer and run across I-85 on foot toward the housing authority area.  Another officer radioed that he had observed a black male driving a silver car with a Georgia license plate heading from a dead-end street toward W. E. Morton Avenue.  Detective Carswell went to that area to try to locate the car, saw a car that matched the description, pulled behind the car, and observed that it had a Georgia license plate.  The car turned right onto Antioch Circle and pulled into a parking space.  He suspected that the car could have

been linked to the subject that was seen fleeing the area by the burglary location because of the Georgia license plate, the absence of a nearby interstate exit that provided access to the area, and the fact that it was seen coming from the general area where the suspect on foot was last seen. He was also suspicious because the car made several turns in dead-end streets, and he suspected that the driver was possibly trying to avoid police.

Detective Carswell then pulled up at an angle less than four feet behind the silver car without blocking it in, activated his lights, and approached the car. Although he was driving an unmarked police car, it had a wraparound brush guard, warning lights, radio antennas, and license plate readers that would indicate it was a police car. Clark was the driver of the silver car, and there was a female passenger with him. Clark got out of his vehicle of his own freewill, and Detective Carswell immediately smelled a strong odor of marijuana when Clark opened his car door. He told Clark to get back inside his car because, due to the strong odor of marijuana, he was going to investigate whether Clark had marijuana in the car. He asked Clark if there was any marijuana in the car, and Clark told him that there was and handed him a small bag of marijuana. He radioed in code 1077—the code for drugs—to other police units. Detective Carswell then observed a bookbag in the backseat and asked Clark to hand him it so that he could see if there were any weapons or contraband inside, as the strong odor of marijuana was not consistent with the small amount of marijuana that Clark had given him. He opened the bookbag and immediately

saw a large amount of marijuana. At that point, Detective Carswell put the bag on top of the car, placed Clark in handcuffs, and placed Clark in custody. The magistrate judge then admitted the dashboard camera video of the incident as a government exhibit, which Detective Carswell narrated as the video played.

On cross-examination, Detective Carswell testified that: (1) he did not observe Clark violating any traffic laws, and the stop was just an investigatory stop; (2) Clark did not match the description of the burglary suspect other than being a black male; (3) Clark was detained as soon as Detective Carswell smelled the marijuana and was not permitted to leave the scene; (4) once Clark was in custody, he began to question Clark without reading him the *Miranda* warnings; (5) he had already decided to search the car once he smelled the marijuana; and (6) Clark did not give him consent to search the bookbag.

On September 4, 2020, the magistrate judge issued a report and recommendation ("R&R"), concluding that the motion to suppress should be denied. The magistrate judge, in making her findings of fact, credited Detective Carswell's testimony and found that, after the silver car parked in an available parking space on Antioch Circle, Detective Carswell "parked his vehicle close to the rear of the silver car, *without blocking it*, and activated his vehicle lights." (emphasis added). Analyzing Clark's Fourth Amendment claims, the magistrate judge determined that the seizure was based on a reasonable suspicion to investigate illegal activity. The judge found that the encounter began as a police-citizen exchange

involving no coercion or detention, not a traffic stop, because Clark had not violated any traffic laws and voluntarily stopped and parked his car without Detective Carswell effectuating a traffic stop by employing his lights or a siren.  The magistrate judge noted Detective Carswell's testimony that he did not activate his vehicle lights until after Clark had pulled his car into the parking space. The magistrate judge stated that Detective Carswell's stated reasons for being suspicious of Clark without any match to the burglary suspect beyond being a black male "may not support a finding of reasonable, articulable suspicion for an investigatory stop if the government fully placed reliance thereon."   But the magistrate judge found that Detective Carswell was acting within the law when he approached Clark for a consensual encounter and that the police-citizen exchange became an investigatory detention supported by reasonable, articulable suspicion that criminal activity was afoot when Detective Carswell smelled the marijuana and told Clark to get back into his car.

The magistrate judge rejected Clark's argument that the encounter was a seizure from the start, noting Clark had conceded that Detective Carswell did not block his car.  The magistrate judge found that Detective Carswell had not used his emergency lights to initiate a stop, Clark parked his car of his own volition, and Detective Carswell had not blocked Clark's exit from the parking space.  She also found that the smell of marijuana altered Detective Carswell's investigatory goals and provided him the ability to detain Clark based on the apparent presence of illegal drugs.   The

magistrate judge thus determined that Detective Carswell's conversion of the encounter from a police-citizen exchange to an investigatory detention based on the apparent presence of illegal narcotics did not violate the Fourth Amendment.

Next, the magistrate judge determined that the search of Clark's car was permissible under the automobile exception to the Fourth Amendment warrant requirement. The judge explained that the exception applied because Clark's car was readily mobile and because Detective Carswell had probable cause to believe a quantity of marijuana capable of producing the strong odor he detected was inside the car, as he smelled it when Clark opened his car door.

Finally, turning to Clark's argument that his Fifth Amendment right against self-incrimination was violated, the magistrate judge determined that the totality of the circumstances did not support a finding of custody within the context of *Miranda*. The judge found that a reasonable person in Clark's position would not have believed that his freedom of movement had been curtailed to the degree associated with a formal arrest. The magistrate judge also found that, regardless of Detective Carswell's subjective belief that he could file criminal charges against Clark if he had departed during the stop, under the objective standard, a reasonable innocent person would not have felt that he was at the mercy of the police such that he must confess to a crime.

Clark objected to the magistrate judge's R&R. The district court overruled his objections, adopted the R&R, and denied

Clark's motion to suppress. The district court specifically agreed with the magistrate judge's finding that Detective Carswell had not blocked Clark's path of exit with his police car, finding that, after viewing the video footage, there was enough room for Clark to exit the parking space. Thus, the district court concluded that the Fourth Amendment was not implicated at the moment the police vehicle came to rest or before the officer became aware of any contraband.

Clark then pled guilty, but he reserved his right to challenge the order denying his suppression motion. After Clark pled guilty, the district court sentenced him to 120 months' imprisonment to run concurrent with two Georgia state court sentences and a sentence imposed in a case before the Middle District of Georgia, followed by a five-year term of supervised release. This appeal ensued.

## II.

"A motion to suppress evidence presents a mixed question of law and fact." *United States v. Lewis*, 674 F.3d 1298, 1302 (11th Cir. 2012). "Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts de novo." *Id.* at 1302–03. When considering a ruling on a motion to suppress, we construe all facts in the light most favorable to the prevailing party and afford substantial deference to the factfinder's credibility determinations. *Id.* A finding is not clearly erroneous unless we are left with a definite and firm conviction that a mistake

has been committed. *United States v. Smith*, 821 F.3d 1293, 1302 (11th Cir. 2016).

### III.

On appeal, Clark argues that the district court erred by denying his motion to suppress when it determined that he was not subject to a Fourth Amendment seizure until Detective Carswell became aware of contraband when he smelled marijuana.[1]

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. "Evidence obtained in violation of the Fourth Amendment must be suppressed." *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). However, not all interactions between law enforcement and citizens implicate the Fourth Amendment. *Id.* "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." *Id.* (quoting *Terry*, 392 U.S. at 19 n.16).

There are three categories of police encounters with citizens, each with varying degrees of Fourth Amendment scrutiny: (1) consensual encounter; (2) brief investigatory stops; and (3) full-scale arrests. *See United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006). A consensual encounter is a police-citizen exchange

---

[1] Clark does not challenge the district court's rulings as to the automobile exception and *Miranda*.

involving no coercion or detention, and it does not implicate the Fourth Amendment. *Id.* To determine whether an encounter was consensual, a district court considers, among other factors: (1) whether the individual's path was blocked; (2) whether identification was retained; (3) the individual's age, education, and intelligence; (4) the length of the detention and questioning; (5) the number of police officers present; (6) whether weapons were displayed, (7) any physical touching of the suspect; and (8) the language and tone of the officers. *Id.* at 778. As long as officers do not coerce an individual to cooperate, officers may approach individuals in public places and pose questions, ask for identification, or request consent to search, even if there is no basis for suspecting that individual. *United States v. Drayton*, 536 U.S. 194, 200–01 (2002). If a reasonable *innocent* person would feel free to decline the officers' requests or terminate the encounter, then it is consensual. *Id.* at 202.

In contrast, a brief investigatory stop constitutes a seizure under the Fourth Amendment, and police officers must have legal grounds to initiate the stop. *See Terry*, 392 U.S. at 22. We determine whether an investigatory stop was legal under the Fourth Amendment by ascertaining (1) whether the stop was justified at its inception, and (2) whether the stop was reasonably related in scope to the circumstances that justified the stop. *United States v. Gonzalez-Zea*, 995 F.3d 1297, 1302 (11th Cir.), *cert. denied*, 142 S. Ct. 506 (2021). An investigatory stop is justified at its inception if, based on the "totality of the circumstances," the officer conducting the stop had "a reasonable, articulable suspicion based on the

objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007) (quoting *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000)).

For example, in *United States v. De La Rosa*, 922 F.2d 675 (11th Cir. 1991), an unmarked police car followed the defendant's car into his apartment complex, where the defendant parked and began walking to his apartment. *Id.* at 677. The officer positioned his car directly behind the defendant's car, approached the defendant, identified himself as a police officer, and asked the defendant if he could speak with him. *Id.* The defendant agreed and consented to a search of his car and apartment, which led to the seizure of records and currency related to drug transactions. *Id.* We concluded that, despite police blocking the defendant's car, the initial encounter did not implicate the Fourth Amendment because, under the totality of the circumstances, a reasonable person would have believed he was free to walk home without conversing with police where he had returned home for the evening with no intent to use his car in the immediate future. *Id.* at 678.

Additionally, in *Miller v. Harget*, 458 F.3d 1251 (11th Cir. 2006), an officer pulled into a parking lot, parked directly behind Miller's already parked car—blocking him from driving away—flashed his window lights, beeped his siren to let Miller know he was there, and approached Miller's car on foot. *See id.* at 1253. This encounter eventually led to Miller's arrest. *Id.* Following his acquittal, Miller filled a 42 U.S.C. § 1983 action in federal court

against the officer and the city, asserting, among other things, a violation of the Fourth Amendment arising from an encounter with the officer that led to his arrest. *See id.* The district court granted summary judgment for the defendants, and we affirmed. *Id.* at 1255, 1261. Of relevance here, we noted that "[t]his Court has decided on several occasions that a police officer does not seize an individual merely by approaching a person in a parked car." *Id.* at 1257. Turning to the facts at hand, we reasoned that, when the officer approached Miller's car, he "did not do anything that would appear coercive to a reasonable person," i.e., "he did not draw his gun, give any directions to Mr. Miller, or activate his roof lights." *Id.* at 1257. We also reasoned that the officer initiated his "window lights" to alert Miller of his presence and that nothing would differentiate the encounter from one where an officer activated his lights and approached a stranded motorist to offer assistance. *Id.* at 1258. We thus concluded that because the officer did not make a "show of authority that communicated to the individual that his liberty was restrained," it was not an investigatory stop. *Id.* (alterations adopted) (quoting *Perez*, 443 F.3d at 778).

We find that *De La Rosa* and *Miller* are instructive here such that the district court did not err in denying Clark's motion to suppress the evidence. Indeed, a review of the totality of the circumstances shows that the initial encounter by Detective Carswell with Clark was consensual, which does not implicate the Fourth Amendment. The district court did not clearly err in its factual findings that Clark voluntarily stopped and parked his car, that

Detective Carswell did not activate his police car's lights or sirens when approaching Clark's car, and that Detective Carswell did not block Clark's vehicle into the spot where it was parked, as these findings were supported by the officer's testimony and the dashboard camera video.  Finally, we note that, during the encounter, Detective Carswell did not ask for identification from Clark, did not say Clark was not free to leave, did not brandish his weapon, did not touch Clark, and did not otherwise coerce his cooperation. These facts also support that the initial encounter was consensual, which, again, does not implicate the Fourth Amendment.  *See Perez*, 443 F.3d at 778.

★ ★ ★ ★

Accordingly, we affirm the district court's denial of Clark's suppression motion.

**AFFIRMED.**