[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11275

_____

GEORGE D. METZ, II,

Plaintiff-Appellee,

*versus*

D. BRIDGES,
officer,
J. DODSON,
officer,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

D.C. Docket No. 1:22-cv-00056-ECM-SMD

————————————

Before WILSON, BRASHER, and ED CARNES, Circuit Judges.

PER CURIAM:

Officers Bridges and Dodson (collectively, the Officers) appeal the district court's denial of their motion to dismiss based on qualified immunity from George Metz's claims of Fourth Amendment unlawful search and seizure brought pursuant to 42 U.S.C. § 1983. On appeal, the Officers argue that: (1) the district court erred in concluding that there was no arguable probable cause to arrest Metz and that it was impermissible to perform a search incident to arrest under the circumstances; and (2) the district court erred in concluding that the Officers' actions violated clearly established law. After careful review and with the benefit of oral argument, we reverse the district court's decision denying the officers qualified immunity.

## I.

The relevant background—gleaned from the allegations in the complaint and the video recordings relied on and undisputed by Metz[1]—is this. On June 4, 2020, Metz and a colleague he calls

---

[1] At the motion to dismiss phase, the court may look beyond the pleadings and consider documentary evidence, such as body camera footage, if: (1) the complaint refers to the footage; (2) the footage is central to the plaintiff's claim; and (3) the authenticity of the footage is not challenged. *See, e.g.*, *Baker v. City of Madison*, 67 F.4th 1268, 1276–78 (11th Cir. 2023); *Horsley v. Feldt*, 304 F.3d

"Bad Cop No Donut" went to the Houston County Department of Human Resources (DHR) in Dothan, Alabama.[2]  When Metz and his colleague entered the lobby, a DHR security guard noticed that they were recording a video.  She told Metz and his colleague they were not allowed to film in the building and asked them to leave.  They refused, claiming they were from "Bolt Action News Group" and they had a First Amendment right to film in public spaces.  Metz's video showed flyers posted in the DHR lobby about matters including adult protective services, child abuse, and child support.  The security guard asked them to leave several times, and each time they ignored her or refused.  At one point, the security guard asked a DHR employee to call 911 to inform the police dispatcher that there were men "filming inside of a building they're not supposed to be in."

Officer Bridges arrived first.  Upon his arrival, a DHR employee pointed out the men and said, "These men are videoing down here."  Officer Bridges asked Metz and his colleague to produce identification, but they refused.  After asking six times, and

---

1125, 1134 (11th Cir. 2002).  As Metz referred to the video by timestamp throughout his complaint, the footage captures the events central to the complaint, and Metz does not dispute its authenticity, the district court properly considered the footage.  In fact, Metz never challenged the district court's decision to consider the videos, nor has he claimed on appeal that we should not consider them.  *See Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681–82 (11th Cir. 2014) (holding that issues not raised on appeal are deemed abandoned).

[2] Alabama DHR offices administer "all forms of public assistance" Ala. Code § 38-2-6(1).

being refused each time, Officer Bridges handcuffed them. When Officer Dodson arrived, a DHR employee told him that the men were refusing to leave after being asked to do so by the security guard. Officer Dodson informed them that they were trespassing and asked them to identify themselves. They did not comply, and Officer Dodson searched them. Eventually, the Officers' supervisor arrived and, after some discussion, told Metz and his colleague they were free to go. They left around an hour after first being handcuffed.

Metz brought a § 1983 claim *pro se* against Officers Bridges and Dodson for violating his Fourth Amendment right to be free from unlawful searches and seizures. The Officers moved to dismiss for qualified immunity, and the district court denied the motion. The Officers timely appealed.

## II.

We review de novo a district court's denial of qualified immunity on a motion to dismiss. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). We accept the factual allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *Id.*; *Baker*, 67 F.4th at 1277 (explaining that we do the same for ambiguities in video footage). But where video footage is "clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account and view the facts in the light depicted by the video." *Baker*, 67 F.4th at 1277–78 (citation omitted).

Further, we are mindful of our obligation to construe filings by pro se litigants liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations omitted).  But we may not rewrite deficient pleadings, and pro se complaints that fail to state a claim must be dismissed.  *See Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

## III.

Section 1983 provides private citizens a cause of action against persons who violate their constitutional rights while acting under color of state law.  42 U.S.C. § 1983. Government officials performing discretionary functions are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation marks omitted).  "Qualified immunity is a defense not only from liability, but also from suit." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).  Under the doctrine of qualified immunity, "all but the plainly incompetent or those who knowingly violate the law" are shielded from litigation. *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007).

To prove he is entitled to qualified immunity, a public official must show that he was acting within the scope of his discretionary authority when the alleged misconduct took place. *Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).  If proven, the burden shifts to the plaintiff to show: (1) the defendant violated a constitutional right, and (2) the right was

clearly established at the time of the alleged misconduct. *Gilmore*, 738 F.3d at 272.

There are three recognized ways a plaintiff can show that a law is clearly established. *Sebastian v. Ortiz*, 918 F.3d 1301, 1310 (11th Cir. 2019). First, by pointing to a case with materially similar facts decided by the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state. *Id.* Second, by showing "a broader, clearly established principle should control the novel facts in this situation." *Id.* (quotations omitted). This principle must be "specific enough to give the officers notice of the clearly established right." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Finally, "the plaintiff can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary." *J.W. ex. rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259–60 (11th Cir. 2018).

The Fourth Amendment, applied to the states by the Fourteenth Amendment, protects people from unreasonable searches and seizures. U.S. Const. amend. IV; *see* U.S. Const. amend. XIV. Courts have recognized three categories of police-citizen encounters, subject to different levels of Fourth Amendment scrutiny: (1) police-citizen interactions involving no coercion or detention; (2) brief seizures or investigatory detentions (known as *Terry* stops[3]); and (3) arrests. *See Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006).

---

[3] *See Terry v. Ohio*, 392 U.S. 1 (1968).

A brief, investigatory *Terry* stop does not violate the Fourth Amendment when the officer has a reasonable suspicion that the person has committed or is about to commit a crime. *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011). "[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information." *Hayes v. Florida*, 470 U.S. 811, 816 (1985). Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Still, "[t]he officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* at 123–24 (quotations omitted). When determining whether reasonable suspicion exists, the courts must review the totality of the circumstances to determine whether the officer had reasonable suspicion to believe that criminal activity "may be afoot." *Miller*, 458 F.3d at 1259 (quotation marks omitted). Defensiveness toward police is a relevant factor. *Jordan*, 635 F.3d at 1187.

Arrests, on the other hand, must be based on probable cause. *Miller*, 458 F.3d at 1259. "Probable cause exists when the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (internal quotation marks omitted). Probable cause requires

"only a probability or substantial chance of criminal activity." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) (quotation marks omitted). It "does not require anything close to conclusive proof . . . or even a finding made by a preponderance of the evidence." *Id.* An officer need not "rule out a suspect's innocent explanation for suspicious facts" nor rule out every affirmative defense, so long as it was reasonable to conclude from the totality of the circumstances that there was a "substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018); *see also Paez*, 915 F.3d at 1286. Officers may search a subject incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 234–35 (1973).

When an officer asserts qualified immunity in the context of an investigatory stop, "the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000). Accordingly, a "law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity." *Id.* at 1165–66. In the context of an allegedly unconstitutional arrest, qualified immunity applies if, based on the totality of the circumstances, the officer had "arguable probable cause" to make the arrest. *Fish v. Brown*, 838 F.3d 1153, 1167 (11th Cir. 2016). Arguable probable cause is a lower standard than actual probable cause and only requires that, "under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present." *Id.* (quotation marks and emphasis omitted). This inquiry includes "the collective knowledge of law

enforcement officials derived from reasonably trustworthy information." *Garcia v. Casey*, 75 F.4th 1176, 1188 (11th Cir. 2023) (quotation marks omitted).

The Officers argued that when they arrived on scene, they believed Metz was committing the crime of trespass. Under Alabama law, "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises." Ala. Code § 13A-7-4(a). Alabama also has a "stop and identify" statute, which provides:

> A . . . policeman of any incorporated city . . . within the limits of the county . . . may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a . . . public offense and may demand of him his name, address, and an explanation of his actions.

Ala. Code § 15-5-30. Dothan City Code § 1-5 makes it a crime for a person to "fail, neglect or refuse to comply with any lawful order of any lawful officer of the city made in pursuance of and under his authority as such officer."

## IV.

In this case, the Officers are entitled to qualified immunity. We begin by noting that Metz did not dispute that the Officers were acting within their discretionary authority, which meant that the burden shifted to him to show both that the Officers violated one of his constitutional rights and that the right was clearly established at the time of the alleged misconduct. *Holloman*, 370 F.3d at

1264; *Williams*, 904 F.3d at 1258. However, Metz has not shown that the Officers violated his constitutional rights, nor that any violation was clearly established.

First, Metz cannot show that Officer Bridges violated his rights because Officer Bridges had at least arguable reasonable suspicion to stop Metz under the circumstances, as well as arguable probable cause to arrest. For starters, even drawing all reasonable inferences from the complaint and video evidence in Metz's favor, *Chesser*, 248 F.3d at 1121; *Baker*, 67 F.4th at 1277, Officer Bridges had arguable reasonable suspicion that Metz was trespassing, justifying a *Terry* stop. As the complaint and undisputed video evidence demonstrate, Officer Bridges was responding to a 911 call made by a DHR employee about men "filming inside of a building they're not supposed to be in." When Officer Bridges arrived, two men were walking around the lobby filming, and a few DHR employees were standing by looking concerned. As soon as Officer Bridges stepped into the lobby, one DHR employee pointed out Metz and his colleague and said, "These men are videoing down here."

On this record, Officer Bridges could have reasonably suspected that the DHR employees had asked the men to leave and that the men had refused, and, thus, that they were trespassing under Alabama law. *See* Ala. Code § 13A-7-4(a). This justified a *Terry* stop. *See* Ala. Code § 15-5-30; *Jordan*, 635 F.3d at 1186.

Once Officer Bridges validly had stopped Metz, he was allowed to ask Metz for identification, and to arrest him when he refused. "The principles of *Terry* permit a State to require a suspect

23-11275            Opinion of the Court            11

to disclose his name in the course of a *Terry* stop." *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 187 (2004). Alabama's stop-and-identify statute imposes this requirement. *See* Ala. Code § 15-5-30. This meant that Metz's refusal to identify himself during a valid *Terry* stop violated Alabama's stop-and-identify statute and gave Officer Bridges probable cause to arrest him. *See Hiibel*, 542 U.S. at 180, 189 (suspect's refusal to provide identity, in violation of state stop-and-identify statute, gave officers probable cause to arrest him); *see also* Ala. Code § 15-5-30; Dothan City Code § 1-5.

As for Officer Dodson, Metz cannot show that he violated a clearly established right. Because Metz was in handcuffs, it was reasonable for an officer in Officer Dodson's position to believe that Metz was arrested, and that Officer Dodson could therefore conduct a search incident to arrest. *See Robinson*, 414 U.S. at 234–35.

## V.

In short, Metz has not established a violation of his constitutional rights—let alone a clearly established right. *See Sebastian*, 918 F.3d at 1310. He does not cite binding caselaw which clearly establishes that either officer's conduct was unlawful, nor do the broader Fourth Amendment principles on which he relies proscribe the Officers' conduct. Finally, he has not shown that the Officers' conduct was so obviously violative of the Constitution that prior case law is unnecessary. Thus, we conclude that the district court erred in denying the Officers qualified immunity.

**REVERSED.**